# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, as subrogee of the Mequon-Thiensville School District,<br><br>Plaintiff,<br><br>v.<br><br>L&A CRYSTAL SERVICES, LLC, and QUICK STEAM SYSTEMS, INC,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY, by and through its attorneys, Denenberg Tuffley, PLLC, and states as follows for its Complaint against Defendants L&A CRYSTAL SERVICES, LLC, and QUICK STEAM SYSTEMS, INC:

## PARTIES

1. Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY ("Liberty"), is a corporation, incorporated in Massachusetts, with its principal place of business in Boston, Massachusetts. Liberty is authorized to write policies of insurance in the State of Wisconsin. At all relevant times, it insured the property of the Mequon-Thiensville School District ("MTSD"), including its Homestead High School ("Homestead") at 5000 West Mequon Road in Mequon, Wisconsin.

2. Upon information and belief, Defendant L&A CRYSTAL SERVICES, LLC ("L&A"), is a limited-liability company, organized in Wisconsin, with its principal place of business at 10903 North Industrial Drive, Mequon, WI 53092.

3. Upon information and belief, Defendant Quick Steam Systems, Inc. ("Quick Steam") is a corporation, incorporated in Wisconsin, with its principal place of business at 1100 East Twin Oaks Drive, Oak Creek, WI, 53154.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the events giving rise to Plaintiff's claim occurred in Ozaukee County, Wisconsin.

## FACTUAL ALLEGATIONS

6. This loss arises out of flooring damage that occurred at MTSD's Homestead High School in Mequon, Wisconsin, on or around July 30, 2020.

7. In 2017, MTSD signed a five-year service contract with L&A for flooring maintenance and cleaning in a number of schools, including Homestead.

8. Among other contractual duties, L&A agreed to maintain the school floors in a neat, clean, and orderly condition; provide all labor, supplies, materials, and equipment for cleaning services; and train its staff on the proper use of all provided chemicals and equipment.

9. Upon information and belief, L&A's typical process when stripping and waxing floors was to mix one part stripper to two parts water and apply generously. L&A then let the stripper solution sit, ran the floor-stripping machine over it, scraped the edges of the tile by hand

where the machine could not reach, and added water as the stripper solution dissolved. The preexisting wax then created a glue-like substance on the tile, and L&A would remove the mixture of stripper solution and old wax by using a walk-behind floor scrubber and mop to clean the floors. After that, L&A would allow the floors to dry then apply six coats of wax to the tile, allowing each coat to dry completely.

10. Upon information and belief, L&A always used the same method of floor treatment at MTSD sites and frequently worked in the schools during the summer.

11. Upon information and belief, L&A subcontracted with Quick Steam to strip and wax some of the floors at Homestead in July 2020.

12. Upon information and belief, there was no written subcontract between L&A and Quick Steam.

13. On or around July 30, 2020, Quick Steam stripped and waxed some of the tile floors in portions of Homestead, including the school's 100 Wing.

14. Upon information and belief, L&A also stripped and waxed the tile floors in different areas of Homestead around the time of Quick Steam's work.

15. The floors were composed of vinyl composite tile ("VCT").

16. The floors were installed in several newly-built areas of Homestead, including the 100 Wing, in 1998.

17. MTSD also had some of the VCT in the 100 Wing replaced around mid-2019.

18. The VCT in the 100 Wing did not show any signs of warping, buckling, lifting, or delamination before Quick Steam stripped and waxed the floors.

19. A few days after Quick Steam completed its stripping and waxing work in July 2020, over approximately 30,000 square feet of the VCT in the 100 Wing showed signs of warping, buckling, lifting, and delamination, particularly at the perimeters of rooms and corridors.

20. Neither the VCT in the other areas of Homestead nor the newer replacement VCT in the 100 Wing showed signs of damage after Quick Steam's work.

21. The VCT in the other areas of Homestead that L&A stripped and waxed around the time of Quick Steam's work showed no damage.

22. Subsequent expert investigation and forensic analysis revealed numerous deficiencies with Quick Steam's work in the 100 Wing.

23. As a result of L&A's contract breach, MTSD sustained damages exceeding $80,000.

24. As a result of Quick Steam's deficient work, MTSD sustained damages exceeding $80,000.

25. At all relevant times, Liberty provided a policy of insurance to MTSD that covered the district's real property and business/personal property.

26. As a result of the aforementioned damages, MTSD submitted a claim to Liberty under the insurance policy.

27. As a result of that claim, and under the policy's terms, Liberty was obligated to, and did, pay MTSD for its damages.

28. As such, to the extent of payments made, Liberty has become subrogated to MTSD's rights against Defendants.

**COUNT I – BREACH OF CONTRACT**
**(against Defendant L&A)**

29. Liberty hereby re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

30. L&A entered into a written contract with MTSD in which L&A agreed to maintain MTSD's facility floors, including at Homestead, in a neat, clean, and orderly condition; perform regular, annual, and detailed summer cleanings; provide all labor, supplies, materials, and equipment for cleaning services; and bear responsibility for training its staff on the proper use of all provided chemicals and equipment. **Exhibit A**, **Janitorial Cleaning Services Agreement, ¶ I, ¶ IV**.

31. Further, the contract requires L&A to name MTSD as an additional insured on its own insurance policy, *Id.* **at ¶ VI**, and directs that the prevailing party in any suit shall be entitled to recover reasonable attorney's fees and costs. *Id.* **at ¶ X**.

32. L&A breached its contractual obligations to MTSD by:

   a. Failing to maintain the floors in Homestead's 100 Wing in a neat, clean, and orderly condition;

   b. Failing to provide the necessary skilled labor to strip and wax the floors in the 100 Wing;

   c. Failing to properly instruct, train, or supervise its chosen subcontractor, Quick Steam, on the proper use of all provided chemicals and equipment;

   d. Failing to provide coverage to MTSD for the loss despite the district's status as an additional insured on L&A's insurance policy; and/or

   e. Any other breaches as may be discovered during litigation.

33. The floors in Homestead's 100 Wing sustained serious damage as a direct and proximate result of L&A's contract breaches, leading the VCT to buckle, warp, lift, and delaminate, and causing more than $80,000 in damages.

34. As a result of the aforementioned damages, MTSD submitted a claim to Liberty.

35. As a result of that claims, and under the policy's terms, Liberty was obligated to, and did, pay MTSD for its damages.

36. As such, to the extent of payments made, Liberty has become subrogated to MTSD's rights against L&A.

## COUNT II – NEGLIGENCE
### (against Defendant L&A)

37. Liberty hereby re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

38. L&A had a duty to use due care and refrain from any act that would cause foreseeable harm to MTSD or its property.

39. L&A breached that duty by:

   a. Failing to maintain the floors in Homestead's 100 Wing in a neat, clean, and orderly condition;

   b. Failing to provide the necessary skilled labor to strip and wax the floors in the 100 Wing;

   c. Failing to properly instruct, train, or supervise its chosen subcontractor, Quick Steam, on the proper use of all provided chemicals and equipment;

   d. Failing to provide coverage to MTSD for the loss despite the district's status as an additional insured on L&A's insurance policy; and/or

   e. Any other breaches as may be discovered during litigation.

## COUNT III – NEGLIGENCE
### (against Defendant Quick Steam)

40. Liberty hereby re-alleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

41. Quick Steam had a duty to use due care and refrain from any act that would cause foreseeable harm to MTSD or its property.

42. Quick Steam breached that duty by:

    a. Insufficiently diluting the stripping mixture used on the floors in the 100 Wing;

    b. Allowing the mixture to stay on the floors for too long;

    c. Cleaning the floors inadequately, which allowed more of the mixture to stay on the tile and in the cracks between the tiles; and/or

    d. Any other breaches as may be discovered during litigation.

43. The floors in Homestead's 100 Wing sustained serious damage as a direct and proximate result of Quick Steam's breaches, leading the VCT to buckle, warp, lift, and delaminate, and causing more than $80,000 in damages.

44. As a result of the aforementioned damages, MTSD submitted an insurance claim to Liberty.

45. As a result of that claims, and under the policy's terms, Liberty was obligated to, and did, pay MTSD for its damages.

46. As such, to the extent of payments made, Liberty has become subrogated to MTSD's rights against Quick Steam.

WHEREFORE, Plaintiff requests relief as follows:

A. For a money judgment against Defendants in an amount in excess of $80,000.00;

B. For an award of Plaintiff's costs, expenses and actual attorneys' fees;

C. For an award of pre- and post-judgment interest; and

D. For such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Pursuant to Wis. Stat. § 805.01(2), Plaintiff hereby demands a trial by a twelve-person jury.

Respectfully submitted,

/s/ Paul B. Hines
Paul B. Hines (P47328)
Matthew D. Wellington (*Pending*)
**DENENBERG TUFFLEY PLLC**
28411 Northwestern Highway
Suite 600
Southfield, MI 48034
(248) 549-3900
phines@dt-law.com
mwellington@dt-law.com
**Attorneys for Plaintiffs**

Dated: February 8, 2022

# CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, February 8, 2022, I electronically filed the foregoing with the clerk of the Court for the United States District Court Eastern District of Wisconsin Milwaukee Division by using the CM/ECF system. I further certify that all participants in the case that are registered CM/ECF users, and that service will be accomplished by the CM/ECF system to all counsel of record.

*/s/ NaChelle Webster*
NaChelle Webster